```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DROR GRONICH, Individually and On
Behalf of All Others Similarly
Situated,                                      MEMORANDUM AND ORDER

                    Plaintiff,

          - against -                          17 Civ. 8983 (NRB)

OMEGA HEALTHCARE INVESTORS, INC., C.
TAYLOR PICKETT, ROBERT O. STEPHENSON,
and DANIEL J. BOOTH,

                    Defendants.
------------------------------------
STEPHEN KLEIN, Individually and On
Behalf of All Others Similarly
Situated,

                    Plaintiff,
                                               17 Civ. 9024 (NRB)
          - against -

OMEGA HEALTHCARE INVESTORS, INC., C.
TAYLOR PICKETT, ROBERT O. STEPHENSON,
and DANIEL J. BOOTH,

                    Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The above-captioned class actions (the "Actions") are brought against Omega Healthcare Investors ("Omega"), its Chief Executive Officer C. Taylor Pickett, its Chief Financial Officer Robert O. Stephenson, and its Chief Operating Officer Daniel J. Booth on behalf of a purported class of persons and entities who acquired Omega securities between February 8, 2017, and October

1

31, 2017, inclusive. The Actions allege violations of the Securities Exchange Act of 1934 (the "Exchange Act"). Five applicants filed motions seeking to consolidate these cases, be appointed as lead plaintiff, and appoint their attorneys as lead counsel. For the reasons set forth below, we consolidate the Actions, appoint Royce Setzer as lead plaintiff, and appoint the Rosen Law Firm as lead counsel.

## DISCUSSION

### I. Consolidation of the Actions

As the related securities class actions filed against Omega contain the same factual and legal issues, we consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure. See Atwood v. Intercept Pharm., Inc., 299 F.R.D. 414, 415 (S.D.N.Y. 2014). Any other securities actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the above cases shall be consolidated with these actions for all purposes. All relevant filings and submissions shall be maintained as one file under docket number 17 Civ. 8983 with the caption In re Omega Healthcare Investors, Inc. Litigation.

### II. Appointment of Lead Plaintiff

The lead plaintiff application process has been unusually acrimonious in this case. The Court received timely motions to be appointed lead plaintiff from: (1) Royce Setzer, represented

2

by the Rosen Law Firm, P.A. (ECF Nos. 9-10)[1]; (2) the Hannah Rosa Trust, represented by Brower Piven (ECF Nos. 11-14); (3) the Carpenters Pension Fund of Illinois ("Carpenters Pension Fund"), represented by Robins Geller Rudman & Dowd LLP (ECF Nos. 15-18); (4) Patricia Zaborowski, Hong Jun, Cynthia Peterson, Simona Vacchieri, and Glenn Fausz (collectively, the "Omega Investor Group"), represented by Pomerantz LLP, with Glancy Prongay & Murray LLP listed as additional counsel (ECF Nos. 19-21); and (5) Glenn Fausz, represented by Faruqi & Faruqi LLP (ECF Nos. 22-24).

Perplexingly, Glenn Fausz submitted two separate applications to be appointed lead plaintiff: one as a member of the Omega Investor Group and another individually. Before any party could raise this issue, the Omega Investor Group, which claimed losses of $306,966 (more than double the amount of losses asserted by any of the other applicants), withdrew its motion to be appointed lead plaintiff and gratuitously proffered that the Hannah Rosa Trust appeared to be the most adequate lead plaintiff. ECF No. 25.

Five days later, Glenn Fausz, through his counsel Faruqi & Faruqi LLP, filed a response recognizing that he did not possess the largest financial interest in the litigation and accusing Pomerantz LLP and Glancy Prongay & Murray LLP of filing their

---

[1] All docket citations are to Gronich v. Omega Healthcare Investors, Inc. et al., No. 17 Civ. 8983 (NRB) (S.D.N.Y. 2017).

3

lead plaintiff motion in bad faith.[2]  ECF Nos. 28-30.  That same day, the Carpenters Pension Fund reiterated its assertion that it was the most adequate lead plaintiff, expressed skepticism about the Omega Investor Group's support of the Hannah Rosa Trust, and requested discovery as to the fee arrangements between them.  ECF Nos. 32-33.  The Hannah Rosa Trust, which had submitted a memorandum in further support of its lead plaintiff application, withdrew its application shortly thereafter.  ECF No. 36.

Two remaining applicants remained after this sturm und drang:  Royce Setzer and the Carpenters Pension Fund of Illinois.  Setzer, who had remained silent for 24 days after filing his initial motion, asserted that he had the largest loss of the remaining movants.  ECF No. 41.  The Carpenters Pension Fund did not dispute that Setzer suffered the largest loss, but argued that Setzer had abandoned his motion, that Setzer's counsel had improperly sent out eight press releases to solicit clients, and that the Pension Fund should receive preference as an institutional investor.  ECF No. 43.

---

[2]  The mudslinging between Faruqi & Faruqi LLP, Pomerantz LLP, and Glancy Prongay & Murray LLP continued even after all three firms had withdrawn themselves from consideration to be lead counsel, with Pomerantz questioning Faruqi's own attorney-client relationship with Mr. Fausz and referencing a judgment in an employment litigation awarded against Faruqi in 2015 (ECF No. 37), and Faruqi accusing Glancy of violating the New York Rules of Professional Conduct for deceptive or misleading attorney advertising based on its undisclosed relationship with the Law Offices of Howard G. Smith (ECF No 39).

4

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in appointing a lead plaintiff, we are to presume that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). An investor seeking to be appointed lead plaintiff need only make a preliminary showing that it satisfies the requirements of Rule 23. Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). The presumption of adequacy may be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### A. Timely Complaints and Motions

Both Setzer and the Carpenters Pension Fund timely filed their motions to be appointed lead plaintiff. The Carpenters Pension Fund argues that Setzer abandoned his motion because he did not "timely" file an opposition, but the PSLRA requires

5

only that an applicant's motion is filed on time; it does not require a timely-filed opposition. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). The cases cited by the Carpenters Pension Fund in support of this proposition, In re KIT Digital, Inc. Sec. Litig., 293 F.R.D. 441, 443 (S.D.N.Y. 2013), Janbay v. Canadian Solar, Inc., 272 F.R.D. 113, 116 (S.D.N.Y. 2010), and Teran v. Subaye, Inc., No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *2 n.2 (S.D.N.Y. Sept. 16, 2011), are inapposite. In each of these cases, movants never filed any further briefing after their initial motion, and their motions were considered abandoned. The Carpenters Pension Fund cites no authority, and the Court is aware of none, where a court deemed a lead plaintiff application abandoned merely because it waited more than 14 days to re-enter the fray.

Next, the Carpenters Pension Fund asserts that this supposedly tardy opposition brief "reflects poorly on both Mr. Setzer's and counsel's desire and ability to adequately advocate on behalf of the putative class." ECF No. 43. The Court disagrees. It was not unreasonable for Mr. Setzer to remain silent while there were two candidates for lead plaintiff with larger claimed losses, and then file an opposition brief once the Omega Investor Group and Hannah Rosa Trust had withdrawn their motions and Mr. Setzer became the movant with the largest claimed loss.

6

**B. Financial Interest**

The presumptive lead plaintiff is the person with the largest financial interest in this action. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). While the PSLRA does not explicitly identify the methodology to use to determine the plaintiff with the largest financial interest, courts in this Circuit have considered the factors set forth in Lax v. First Merchs. Acceptance Corp., No. 97-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), which are: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered. Consistent with other courts in this Circuit, we place the greatest emphasis on the approximate loss suffered by the movant. See Teran v. Subaye, Inc., No. 11-2614, 2011 WL 4357362, at *2 (S.D.N.Y. Sept. 16, 2011) (collecting cases).

It is undisputed that Setzer claims the largest approximate loss of the remaining movants – he alleges that he held 30,000 shares and lost $119,400. ECF No. 10-3. By contrast, the Carpenters Pension Fund alleges that it held 11,400 shares and suffered $49,662.59 in total losses.[3] ECF No. 18-3.

---

[3] Before it withdrew, the Hannah Rosa Trust offered an alternative loss calculation based on the competing movants' "compensable losses," as opposed to the movants' total trading losses. ECF No. 34, p. 3. Setzer still had the greatest loss using this methodology: the Hannah Rosa Trust calculated that Mr. Setzer lost $63,000, while the Carpenters Pension Fund lost only $24,054. Id.

7

Accordingly, we find that Setzer has the largest financial interest in the relief sought by the class.

**C. Rule 23 Requirements**

In order to be the presumptive lead plaintiff, a movant must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, of which "typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA." Shi v. Sina Corp., No. 05-2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). At this stage in the litigation, only a preliminary showing of typicality and adequacy is required. In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).

Setzer has put forth a prima facie showing of typicality and adequacy. The typicality threshold is satisfied where the presumptive lead plaintiff's claims arise from the same conduct from which the other class members' claims and injuries arise. Teran, 2011 WL 4357362, at *5. Setzer alleges that he purchased Omega securities during the Class Period in reliance upon the allegedly false and misleading statements by the defendants about Omega's business and financial condition, and that he suffered damages as a result. ECF No. 10.

8

Setzer also meets the adequacy requirement, which is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation, (2) there is no conflict between the proposed lead plaintiff and the members of the class, and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. Id. First, Setzer has retained as his counsel the Rosen Law Firm, which has experience prosecuting securities class actions. See, e.g., In re ForceField Energy Inc. Sec. Litig, 15 Civ. 3020 (NRB) (S.D.N.Y. 2015). Second, Setzer's financial interest should ensure vigorous advocacy on behalf of the class. Finally, there is no reason to believe that Setzer has interests that are adverse to those of the class members, and no competing movant suggests otherwise. Because Setzer has the largest financial interest and meets the Rule 23 requirements, he is presumptively the lead class plaintiff.

**D.   Rebuttal Evidence**

The most adequate plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

9

The Carpenters Pension Fund presents two arguments that Setzer will not adequately represent the class, but neither successfully rebuts the presumption. First, the Carpenters Pension Fund asserts that it is a more adequate lead plaintiff than Setzer because it is an institutional investor with prior experience serving as lead plaintiff in securities cases. ECF No. 43, p. 2. The legislative history to the PSLRA suggests that one policy goal of the statute was to appoint institutional investors as lead plaintiffs. See H.R. Conf. Rep. No. 104-369, at 34 (1995); S. Rep. No. 104-98, at 11 (1995). However, the statutory mechanism adopted by Congress favors institutional investors only insofar as they have the largest financial interest in the action and meet the requirements of Rule 23. See S. Rep. No. 104-98, at 11 (indicating that the PSLRA will "increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff'"); Francisco v. Abengoa, S.A., No. 15 Civ. 6279 (ER), 2016 WL 3004664, at *5 (S.D.N.Y. May 24, 2016) ("[Movant] has not provided any authority suggesting that its status as an institutional investor can overcome the presumption of adequacy accorded to the [individual investors] who undeniably have the largest financial interest in this case.").

10

In the cases cited by the Carpenters Pension Fund, courts either appointed an institutional investor as lead plaintiff because it had the largest financial interest, see Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014); In re Gentiva Sec. Litig., 281 F.R.D. 108, 113 (E.D.N.Y. 2012); Juliar v. Sunopta Inc., No. 08 Civ. 933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009); Glauser v. EVCI Ctr. Colls. Holding Corp., 236 F.R.D. 184, 188 (S.D.N.Y. 2006); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 402 (S.D.N.Y. 2004), or appointed an institutional investor as co-lead plaintiff, see Malasky v. IAC/InteractiveCorp, No. 04 Civ. 7447 (RJH), 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998). Plaintiffs cite no case where a presumptive lead plaintiff individual investor was supplanted by an institutional investor with less at stake in the litigation.

Second, the Carpenters Pension Fund argues that Setzer and his counsel are unqualified to lead the case because his counsel filed eight press releases to solicit clients. ECF No. 43, pp. 1-2; see also ECF No. 32, pp. 10-13. While certain courts in other districts have criticized the publication of multiple press releases in a single case, the PSLRA does not ban this practice, cf. 15 U.S.C. § 78u-4(a)(3)(A)(i) (requiring

11

Case 1:17-cv-08983-NRB   Document 44   Filed 03/27/18   Page 12 of 13

publication of notice in a widely circulated national business-oriented publication or wire service), and the Carpenters Pension Fund does not criticize any specific aspect (other than sheer quantity) of the Rosen Law Firm's press releases as being misleading or otherwise improper. The Court is therefore not persuaded that the press releases disqualify Setzer from serving as lead plaintiff, but we do recognize that they evidence the intense competition between certain firms that routinely seek to be appointed lead counsel in securities class actions.

In sum, no evidence presented to the Court provides any proof to overcome the presumption that Setzer be appointed lead plaintiff. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)

**III. Appointment of Lead Counsel**

The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03-1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (internal quotation marks omitted). Setzer has retained the Rosen Law Firm as his counsel. As discussed above, the firm has experience prosecuting securities class actions, and we have no reason to believe that it will not adequately represent the interests of the class. Accordingly, we appoint the Rosen Law Firm as lead counsel.

**CONCLUSION**

For the foregoing reasons, the cases are ordered consolidated as In re Omega Healthcare Investors, Inc. Securities Litigation, No. 17 Civ. 8983 (NRB). Royce Setzer is appointed lead plaintiff, and the Rosen Law Firm is appointed lead counsel. All motions by competing movants are denied. Consistent with the Stipulation and Order dated February 2, 2018 (ECF No. 35), the parties are instructed to submit to the Court an agreed-upon schedule for the filing of an amended complaint and the response thereto. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 9, 11, 12, 16, 19, 22, and 41.

**SO ORDERED.**

Dated:  New York, New York
        March **27**, 2018

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE