**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re OMEGA HEALTHCARE INVESTORS, INC. SECURITIES LITIGATION | **1:17-cv-08983-NRB**<br><br>**ESI PLAN AND ~~[PROPOSED]~~ ORDER** |

It is hereby stipulated and agreed by and among the parties to this action ("Parties," and each a "Party"), subject to the approval of the Court, that the following ESI Plan and ~~[Proposed]~~ Order ("Plan") shall govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules. Any disputes arising out of the production of Documents subject to this Plan shall be resolved according to Federal Rules of Civil Procedure and any applicable orders of the Court.

## I.      GENERAL TERMS

A.      ESI will be part of the discoverable material in this case and. The Parties will cooperate on issues relating to discovery of ESI and other Documents and information. The Parties recognize that collaborative conduct in the course of discovery reduces litigation costs and delay. The Parties will engage in informal discussions about the discovery of ESI throughout the litigation as necessary. Counsel will be knowledgeable about their respective clients' information technology infrastructure, including the manner in which potentially relevant data is stored and retrieved. The Parties are encouraged to bring technically-adept personnel together to resolve e-discovery issues. The Parties agree to cooperatively exchange, in reasonably usable form as described below, non-privileged discoverable material and use reasonable and proportional efforts to identify, preserve, collect, and produce relevant information.

B.      To further proportional and cost-effective discovery and the application of the standard for discovery set forth in Fed. R. Civ. P. 26(b)(1), the Parties agree to:

1.      Meet and confer to identify the appropriate scope of discovery, including custodians, data sources, subject matters relevant to the claims and defenses, the relevant time period and other parameters to limit and guide the preservation and production of discoverable information; and

2.      Tailor requests for production and related responses to be as clear and specific as reasonably practicable.

C.      Nothing contained in this Plan shall be construed to limit or expand the scope of permissible discovery, as established by the Federal Rules of Civil Procedure, or shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. By this Plan, the Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI, including that the ESI is not reasonably accessible because of undue burden or cost.

D.      Nothing in this Plan shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Plan. Nor does this Plan prohibit any Party from seeking relief from this Plan consistent with applicable law.

E.      The production of Documents under this Plan are subject to the terms of the Parties' stipulated Protective Order.

F.      For good cause, the Parties may modify this Plan via a written agreement signed by counsel for both Parties.  An amended version of this Plan reflecting such modifications shall

be filed with the Court within three (3) business days of latest dated signature on such

modification.

## II.     DEFINITIONS

A.     The definitions set forth in Rule 26.3 of the Local Rules of the United States

District Courts for the Southern and Eastern Districts of New York (the "Local Rules")

are incorporated herein by reference.

B.     "Documents" shall have the same definition as set forth in the Federal Rule of

Civil Procedure 34(a).

C.     "Duplicate" means and refers to a Document or ESI with identical content and

Metadata fields (other than the custodian field) as another Document or ESI.

D.     "Digital Communications" means any form of text, image, video, or audio

communication created, exchanged, or stored in electronic format, including but not limited to e-

mail, voice mail, Text Messages, and Instant Messages, as defined herein.

E.     "Electronically stored information" or "ESI" as used herein has the same meaning

as in the Federal Rules of Civil Procedure and other applicable law, including Rules 26 and 34(a)

of the Federal Rules of Civil Procedure, as elaborated in the Committee Notes to those Rules,

and includes but it not limited to Documents created or stored in electronic form, whether on

local devices or in remote networked repositories (e.g. Cloud-based storage or platforms)  and

Digital Communications, as defined herein.

F.     "Extracted Text" means the text extracted from a Native file and includes all

header, footer and document body information as well as any other text, such as comments and

tracked changes in Microsoft Word Documents and notes in Microsoft PowerPoint Documents.

G.      "Family", in the context of Documents and ESI, means a group of documents which are related by Parent-Child Relationships.

H.      "Hard Copy Document" means a document collected from physical files and not from electronic sources.

I.      "Instant Messages" means real-time communications, including but not limited to ephemeral communications, sent via chat application, platform, or client, or any similar standard, including but not limited to Bloomberg Chat, Slack, Google Talk, Google Chat, Google Hangouts, Apple iMessage, WhatsApp, WeChat, QQ, Viber, Facebook Messenger, Microsoft Teams, Skype, Zoom, Discord, Snapchat, Signal, Line, Telegram, AOL Instant Messenger, Huawei Cloud, Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, or any proprietary Instant Messaging system.

J.      "Key Custodians" are those individuals from whom the Parties have agreed to collect ESI and Documents because such individuals are likely to possess Responsive Data.

K.      "Load/Unitization file" means an electronic file containing information identifying a set of scanned images of Hard Copy Documents or ESI and indicating where individual pages or files belong together as Documents, including Family members, and where each document begins and ends.  A Load/Unitization file shall also contain data relevant to the individual Documents, such as Metadata, coded data, and OCR (as defined herein) or Extracted Text (as defined herein).

L.      "Media" means an object or device, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

M.      "Metadata" means structural information of a file that contains data about the file, as opposed to describing the contents of a file.

N.      "Native," "Native Format," or "Native Data Format" means and refers to an electronic document's associated file structure as defined by the original creating application. For example, the native format of an Excel workbook is an .xls or .xlsx file.

O.      "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

P.      "Parent-Child Relationship" means a relationship between Documents or ESI that are related or interdependent in their native form, e.g., the association between an attachment and its parent e-mail, or a spreadsheet embedded within a wordprocessing document.

Q.      "Privileged Material" means communications, Documents, or information protected by the attorney-client privilege, work product doctrine, executive privilege, legislative privilege or any other privilege.

R.      "Producing Party" means the party that may be producing Documents in response to the request of Requesting Party.

S.      "Requesting Party" means the party requesting production of Documents.

T.      "Responsive Data" means Documents, including ESI, that are responsive to discovery requests.

U.      "Static Image(s)" means a representation of ESI produced by converting a Native file into a standard image format capable of being viewed and printed on standard computer systems.  A TIFF image is an example of a Static Image.

V.      "TAR" means Technology Assisted Review using computer algorithms or programs to identify and tag potentially responsive documents based on keywords and other Metadata.

W.    "Text Messages" means electronic messages that are sent among users with mobile devices.  Text Messages shall include Short Messaging Service (SMS) and Multimedia Messaging Service (MMS).

X.    "TIFF" means and refers to Tagged Image File Format.

## III.    DEFINING THE SCOPE OF DISCOVERY

A.    <u>Search Procedures for Documents and ESI</u>

1.    The Parties shall meet and confer as soon as feasible (after the service of discovery demands) to define the scope of Responsive Data, particularly email, that will serve as the basis for discovery.

2.    Prior to the initial meet and confer, the Parties shall conduct a reasonable and good faith inquiry for sources and repositories that may contain Documents and ESI subject to production under the Federal Rules of Civil Procedure, and shall be prepared to discuss potential custodians, shared repositories and non-custodial data sources, information and communications systems, officer and employee technology use practices and policies, and related information at or prior to the initial meet and confer. The Parties appreciate that the information discussed at the meet and confer concerning sources and repositories of Documents and ESI may inform any agreed-upon scope of collection efforts.  In the event that subsequent information emerges concerning additional sources or repositories of Documents and ESI, the Parties reserve their rights, if any, to request the collection of additional Documents or ESI from such newly discovered sources or repositories.

3.    Specifically, the Parties shall meet and confer and either reach agreement or a defined impasse on the sources of potentially relevant and Responsive Data, including:

a)  Identification of Key Custodians, including agreeing upon a total number of Key Custodians, and any other non-custodial repositories or sources of potentially Responsive Data.

b)  The proposed method of searching ESI, including any Search Terms and/or Boolean search strings, date ranges and any additional parameters to be applied.

c)  Whether certain categories of documents or requests for production are amenable to retrieval without utilizing Search Terms, i.e., using a "go-get" approach.

d)  Specific types and categories of Documents and ESI that comprise Responsive Data for purposes of this case.

4.      The Parties shall meet and confer and either reach agreement or a defined impasse on a limit on the identification of Key Custodians, as set forth in paragraph III.A.3.a above.  After this limit is set, the parties may jointly agree to modify this limit without the Court's leave.

5.      The Parties shall meet and confer and either reach agreement or a defined impasse on the implementation of search terms and or other methods of searching for potentially Responsive Data, as set forth in paragraph III.A.3.b above.  To the extent feasible, the Parties will confer on a process to test the efficacy of proposed search terms and cooperate to resolve any disputes as to specific terms.  After these terms are agreed upon, the parties may jointly agree to modify their agreement without the Court's leave.  The Court shall consider contested requests for additional search terms, upon showing a need based on the size, complexity, and issues of this specific case.  Cost-shifting may be considered as part of any such request.

6.      Nothing in this Plan prevents the Parties from agreeing to use TAR or other advanced analytics insofar as their use improves the efficacy of discovery.  Such topics should be discussed during the meet and confer discussed above.

7.      That Parties agree that results of an agreed upon search term or method will not be presumed relevant, responsive, or subject to production.  Such procedures are meant only for electronically limiting the set of Documents and ESI that the Producing Party will review for individual determination of relevance, responsiveness, and privilege, etc.

B.      <u>Collection and Production of Responsive Data from Relevant Data Locations</u>: The Parties shall engage in the collection of potentially Responsive Data and subsequent production of Responsive Data as soon as feasible.  If, and to the extent, an impasse has been identified with respect to any production of Documents and ESI, the Parties will endeavor to produce all categories of Responsive Data as to which there is no dispute and will produce the remaining Responsive Data once the Court resolves any impasse.

## IV.     PRODUCTION FORMAT

A.      In producing Documents in the reasonably usable form described herein, the Parties shall use reasonable efforts to comply with the production formats described herein.  In the event a Party determines that it cannot materially comply with any requirement herein, it shall disclose its inability to comply and Parties shall meet and confer regarding resolution of the identified issue.

B.      <u>Hard-Copy Documents</u>

1.      Hard-Copy Documents shall be produced as TIFF images (consistent with the specifications in Paragraph IV.C.1 below).

2.      The production shall include the appropriate Load/Unitization files (consistent with the specifications in Paragraph IV.C.7 below) that will, at a minimum, to the extent possible, contain the following fields (described in TABLE 1):

a)  Beginning Production Number (ProdBeg);

b)  Ending Production Number (ProdEnd);

c)  Beginning Attachment Production Number (BegAttach);

d)  End Attachment Production Number (EndAttach);

e)  Custodian/Source;

f)  Confidentiality (pursuant to Protective Order);

g)  Page Counts;

h)  Redaction (Y/N); and

i)  OCR.TXT file.

3.      In scanning Hard Copy Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., Hard CopyDocuments should be logically unitized).   The Producing Party will use reasonable efforts to unitize Hard Copy Documents correctly.

4.      The Producing Party will use reasonable efforts to ensure that Hard Copy Documents for a particular custodian, which are included in a single production, are produced in consecutive Bates-stamp order.

5.      Where a Document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

C.      ESI

1.    ***TIFF Format***: Subject to Paragraph IV.C.2 below, ESI shall be produced as black-and-white, single-page, 300 dpi TIFF images, except that the Requesting Party may request color images of Documents where color is reasonably necessary to their comprehension or use.

      a)   Where technically feasible, TIFFs shall be produced in 8½ x 11-inch page size images at a resolution of at least 300 dpi with the quality setting of 75% or higher.

      b)   Unless redacted, Documents produced in TIFF format should be accompanied by a searchable text (.TXT) file extracted from the Native file (not generated as an OCR file from the corresponding TIFF image), and such text files shall contain the full text extraction.

      c)   Each image file of an electronic document will be created directly from the original electronic document.

      d)   Image files shall show all text and images that would be visible in the original Native Format, including redlines and speaker notes.

      e)   All Documents shall be produced in their original language.

      f)   To the extent a Requesting Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Requesting Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

2.    ***Native Format***: Notwithstanding Paragraph IV.C.1 above, the following types of ESI will be produced in Native Format: (i) spreadsheets (e.g., Excel files, and files

formatted as .csv, .xls, .wks); (ii) Audio/video files; (iii) Animations; and (iv) other Documents that do not convert well to TIFF images (with consideration to the inclusion of Metadata set forth in TABLE 1).

    a) Documents produced in Native format will include a corresponding placeholder TIFF image bearing the Bates number and confidentiality designation (if any) for the Document.

    b) To the extent available, Documents produced in Native format shall be accompanied by sufficient information to allow the parties to track and authenticate the Native Documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD5 Hash Value"; (iii) the original name of the file; (iv) a Bates number; and (v) unless there is no textual content, an OCR or Extracted Text file.

    c) To preserve the integrity of any file produced in Native format, no Bates number, confidentiality designation, or internal tracking number should be added to the body of the Native format Document unless otherwise agreed to between the Producing Party and the Requesting Party.

3. ***Bates Numbering***:

    a) All TIFF images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, (4)

be sequential within a given document, and (5) not obscure any
underlying content on the images.

b)  Documents produced in Native format will include a corresponding
placeholder TIFF image bearing a sequential Bates number within the
Family Bates range for the Document.

4.  ***Redaction***: To the extent that a responsive document contains content that
is (i) privileged or protected from discovery as work product or by reason of any other applicable
privilege or immunity; (ii) protected information subject to federal, state, or foreign privacy
requirements (e.g., HIPAA); or (iii) personally or commercially sensitive information that is not
otherwise Responsive Data, the Producing Party may produce that Document in a redacted form.

a)  Any redactions shall be clearly indicated on each page of the
document from which information is redacted, bearing a designation
that it has been redacted. The designation shall make clear the reason
for the redaction (e.g., "Redacted Privileged").

b)  Where a document contains both privileged and non-privileged
Responsive Data, the Producing Party shall redact the privileged
material and produce the remainder of the document as redacted.

c)  In the case of files with redacted text, OCR'ed text of the redacted
Documents may be provided in lieu of extracted text so long as the
OCR'ed text is comprehensible.

d)  Documents that require redaction and would otherwise be produced in
Native format under Paragraph IV.C.2 above may instead be produced
in TIFF format, provided that, to the extent feasible, such production is

12

consistent with the provisions set forth in this Plan for the production
of Documents in TIFF format pursuant to Paragraph IV.C.1. The
Parties acknowledge that redacting a Native file may alter the
Metadata of the produced file, and to the extent feasible without
disclosing redacted information, agree to produce Metadata extracted
from the original Native file, which Metadata shall include all non-
privileged information contained in the original file that is otherwise
required by this Plan (including but not limited to pivot tables,
workbooks, notes, comments, "hidden" rows/columns/slides, formulas,
calculations, hyperlinks, and/or embedded files), with any redaction
clearly delineated.

e)   Native Excel or other spreadsheet may alternatively be redacted by
overwriting the data contained in a particular cell, row, column, or tab
with the word "Redacted"and shall make clear the reason for the
redaction (e.g., "Redacted Privilege").

f)   If the items redacted and partially withheld from production are
audio/visualfiles, the Producing Party shall provide the unredacted
portions of the content. If the content is a voice recording, the parties
shall meet and confer to discuss the appropriate manner for the
Producing Party to produce the unredacted portion of the content.

5.   ***Parent-Child Relationships****:* Parent-Child Relationships must be
preserved by assigning sequential Bates numbers to all files within a Family, and by providing
accurate attachment ranges for those files in the Metadata fields required.

13

a) Responsive Data generally will include all other Documents within the Family of a Document containing Responsive Data. Nothing in this Plan shall prejudice any Party's right to claim an exception with respect to particular Documents, or categories of Documents, that it believes are appropriate to withhold on the basis of any applicable privilege, notwithstanding the existence of a Parent-Child Relationship with other Documents containing Responsive Data.

b) If a Party withholds any Document within the Family of a Document that is produced, the Producing Party shall produce a one-page TIFF image (or PDF if production format dictates) in place of the withheld Family member, stating the reason for the withholding (e.g., "Privilege") and bearing a sequential Bates number within the Family Bates range.  In the event a withheld Family member is later produced, the other members of the Family should be reproduced with the newly produced member.

c)      To the extent reasonably feasible, non-image embedded ESI Documents (e.g., a spreadsheet embedded within a word processing document or an audio file in a PowerPoint presentation, or a document referenced or shared via hyperlink to a fileshare or other shared repository (such as Google Drive/Docs/Sheets, OneDrive, DropBox, or Slack)) may be treated as a Family member of the Document to which it is embedded. The Parties acknowledge that extracting such data may present logistical burdens, the proportionality of which to the needs of the case may depend

14

upon the responsiveness or materiality of such Documents, their availability from alternative sources, or other context-specific information. Prior to applying any search terms or TAR, the Parties shall meet and confer in good faith to identify shared repositories which may contain non-image embedded ESI Documents constituting Responsive Data, to determine how identified non-image embedded ESI Documents should be treated, and to work collaboratively to agree upon whether and how such non-image embedded ESI Documents will be extracted, indexed, associated with any related Documents, and produced. Nothing in this paragraph shall prejudice a Requesting Party's right, if any, to assert that it is entitled to the production of non-image embedded ESI Documents under the Federal Rules of Civil Procedure, nor shall it prejudice a Producing Party's right, if any, to assert that the extraction and production of particular Documents, or categories of Documents, would be unduly burdensome, not proportional to the needs of the case, or otherwise inappropriate under the Federal Rules of Civil Procedure.

6.    ***Deduplication and De-NISTing Documents.*** To reduce the unnecessary costs of reviewing and producing Duplicate ESI, to the extent reasonably possible and accounting for any technical limitations of any Party's ESI, Duplicate Documents may be removed as set forth below:

a)    Duplicate ESI may be removed prior to producing Documents, based on the MD5 or SHA-1 hash values at the Parent document level. For

example, a stand-alone file may be removed if a Duplicate stand-alone file is produced, but not if the Duplicate file is a member of a unique Family.

b)      Duplicate Documents within custodians and/or across custodians may be removed, provided that names of custodians of removed Duplicates shall, if such information is readily available, be provided in the OTHER CUSTODIAN field (as provided in TABLE 1) accompanying the produced file.

c)      Extracted logos may be removed prior to producing Documents.

d)      Common system and program files as defined by the NIST Library need not be processed, reviewed, or produced.

e)      If during the course of its review the Producing Party identifies a large number of Duplicate Documents, the Parties may meet and confer regarding a custom de-duplication protocol.  No de-duplication methods other than those set forth herein will be implemented without first meeting and conferring with the Requesting Party.

7.      ***Load/Unitization files***: There shall be two Load/Unitization files accompanying all productions with Documents in TIFF format: one will be the Image Load File and the other will be the Metadata Load File. The specifics of these files are detailed in (a) and (b) below:

a)   Image Load File

(1)      Every Document  referenced in a production Image Load File shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to load the data properly.

(2)      Documents shall be produced in only one Image Load File throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

(3)      Images will be delivered with an image load file in the Opticon (.OPT) file format.

(4)      The name of the image load file shall mirror the name of the delivery volume (e.g., ABC001.opt). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).

(5)      The load file shall contain one row per TIFF image.

(6)      Every image in the delivery volume shall be contained in the Image Load File.

(7)      The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

b)  <u>Metadata Load File</u>

(1)      Metadata, to the extent available, shall be provided in a Concordance-format delimited file with a .DAT file extension.

(2)      The Metadata load file shall use Concordance default delimiters.

(3)      Data for Documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

(4)      The first line of the .DAT file must be a header row identifying the field names.

(5)      All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM/PM" format.

(6)      A carriage-return line-feed shall be used to indicate the start of the next record.

(7)      Load files shall not span across Media; a separate volume shall be created for each piece of media delivered.

(8)      The name of the Metadata load file shall mirror the name of the delivery volume (i.e., ABC001.dat).

(9)      The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

8.      ***Metadata fields***: ESI shall be produced to the Requesting Party as Static Images together with a Load/Unitization file that contains the Metadata fields described in TABLE 1 below on the document level, to the extent available, and except as set forth in paragraph B.1 above. Nothing in this section shall be interpreted to mean that any of the contemplated fields actually exist or are available for any specific Document or species of Documents or ESI. If available and not privileged, the fields in TABLE 1 below associated with each electronic Document including the body of the document, shall be produced in the appropriate Load/Unitization file.

a)      The Parties are not obligated manually to populate any of the fields in TABLE 1 if such fields cannot be extracted from a document, with the

exception of the fields identified in Paragraph IV.B.2 above (relating to Hard Copy Documents).

b) The Parties will make reasonable efforts to ensure that Metadata fields automatically extracted from the Documents are correct, however, the Parties acknowledge that such Metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process.

c) The Producing Party may satisfy its obligations under this Paragraph IV.C.8 with respect to any ESI file described in Paragraph IV.C.2.iv (including any contact or calendar file) by producing such file in Native Format.  The Requesting Party may request other Native Files be produced as described herein.

### TABLE 1: Metadata Field List

| Field Name | Description | Doc Type |
|---|---|---|
| BEGBATES | First Bates number of each document being produced | All |
| ENDBATES | Last Bates number of each document being produced | All |
| BATESRANGE | Full Bates Number range (production number) | All |
| PAGECOUNT | Number of pages of each individual document | All |
| PARENTBATES | Begin Bates number for the parent email of a Family (will not be populated for Documents that are not part of a Family) | All |
| BEGATTACH | First Bates number of Family range (will not be populated for Documents that are not part of a Family) | All |
| ENDATTACH | Last Bates number of Family range (will not be populated for Documents that are not part of a Family) | All |
| ATTACHCOUNT | The number of attachments in the Family | All |
| CUSTODIAN | Name of person or data source (non-human) from where Documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial that is kept constant | All |

| | throughout productions (e.g., Smith, John A. and Smith, John B.) Department or organization name for non-electronic Documents or Documents that are accessible for editing by more than a single user on a shared network drive. | |
|---|---|---|
| OTHER CUSTODIANS | Unless CUSTODIAN is a multi-value field, additional custodians who possessed a duplicate copy of an email or application file (if deduping across custodians) | All |
| FILESIZE | Size of application file document/email in KB | All |
| LOGICALPATH | The directory structure of the original file(s). Any container name is included in the path. | All |
| DESIGNATION | Confidentiality designation assigned to the document pursuant to any confidentiality/protective order in the case | All |
| REDACTION | Redaction applied by the party or party's vendor | All |
| NATIVE FILE | Link to the native email or application file | All |
| HASHVALUE | Hash value of each email or application file | All |
| TEXTLINK | File path for OCR or Extracted Text files | All |
| DOCUMENT TYPE | Type of document | All |
| TITLE | Title from a document's properties | All |
| AUTHOR | Author of document | All |
| DATECREATED | Date file was created | All |
| TIMECREATED | Time file was created | All |
| DATEMODIFIED | Date file was last modified | All |
| TIMEMODIFIED | Time file was last modified | All |
| FROM | Sender of an email | Email |
| TO | Addressee(s) of an email | Email |
| CC | Recipient(s) copied on an email | Email |
| BCC | Recipients blind copied on an email | Email |
| SUBJECT | Subject line of the email | Email |
| DATESENT | Date the email was sent (mm/dd/yyyy hh:mm:ss AM/PM) | Email |
| RECEIVEDDATE | Date the email was received (mm/dd/yyyy hh:mm:ss AM/PM) | Email |
| NAME FIELDS | All names associated with contact entry (such as first, last,middle, nicknames, prefix, suffix, etc.) | Contact |
| EMAIL ALIASES | For example, the name or reference that will display in the email address lines in place of the actual email address | Contact |
| PHONE NUMBERS | All phone numbers associatedwith the contact entry | Contact |
| ADDRESSES | All physical/mailing addresses associated with the contact entry | Contact |
| URL ADDRESSES | All URL addresses associated with the contact entry | Contact |

| NOTES/JOURNAL FIELD | All free text entered by user that is associated with and reflected in contact entry | Contact |
|---|---|---|
| OTHER CONTACTS | Identification of other contact entries associated with and reflected in the contact entry, such as contact entry's assistant or manager | Contact |
| CONTACT TRACKING | Track contacts made with the person or entity shown in the contact entry, such as date and/or time and type of contact. | Contact |
| IMPORTANCE RANKING | Level of importance/sensitivity of the contact entry (e.g., High Importance or Low Importance) | Contact |
| FOLLOW-UP FLAGS | Tracks responses to contact entries that were sent and follow up on contact entries that were received | Contact |
| CATEGORIES/ GROUPS | Specific fields designed to sort, filter or classify the contact entry | Contact |
| NOTES/JOURNAL FIELD | All free text entered by the user that is reflected in the calendar entry | Calendar |
| IMPORTANCE RANKING | Level of importance/sensitivity of the calendar entry | Calendar |
| FOLLOW-UP FLAGS | Tracks responses to calendar entries that were sent and follow-up on calendar entries that were received | Calendar |
| CATEGORIES/GROUPS | Specific fields designed to sort, filter or classify calendar entries | Calendar |
| RESPONSE CATEGORY | The response to a calendar or meeting invitation (e.g., tentative or accepted) | Calendar |

9.     *Compressed files*: Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure a container within a container is decompressed, in a reiterative manner, into the lowest uncompressed element resulting in individual files.  The container file itself shall not be produced.

10.     *Suppressed Metadata*: Metadata fields may be suppressed for Documents produced with redactions if those fields contain information that would qualify for redaction if printed.

11.     *Auto date/time stamps*: ESI items shall be processed whenever possible so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing. The Parties shall meet and confer to agree upon a standard time and date format

and time zone, and methodology for conversion of nonconforming Metadata fields,  to preserve consistency and comparability in all Metadata fields related to time and date (i.e. DATECREATED, TIMECREATED, DATEMODIFIED, TIME MODIFIED, DATESENT, RECEIVEDDATE).

12.     ***E-mail Thread Suppression:***  Email threads are email communications that contain prior or less-included email communications.   Only the final-in-time Document containing Responsive Data in an email thread need be produced, so long as all previous emails in the thread are identically contained within the final message.  Where a prior-in-time Document includes a unique Family, that Family must also be produced.   The Producing Party is not required to obtain the agreement of the Requesting Party to implement its threading methodology.  The Requesting Party reserves its right (if any) to raise issues with the Court in the event that it believes thread suppression has been performed improperly.

13.     ***Password Protected Files***. Where the password to an encrypted or password protected file is known, the Producing Party shall make efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted Document is produced (if responsive and not privileged).  To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this ESI Protocol, the Producing Party has no duty to identify the prior encrypted status of such Documents. To the extent such Documents are not successfully processed that are members of a responsive Family, the Producing Party agrees to: (a) produce a slip sheet for each encrypted or password protected Document indicating that the Producing Party could not successfully process the Document because it cannot be decrypted; and (b) provide the Metadata for the Document required by

TABLE 1 to the extent it can be reasonably extracted from the file in its encrypted form. The Requesting Party and/or Producing Party, as appropriate, shall meet and confer regarding any requests that a Producing Party undertake additional efforts to decrypt files after production.

14. ***Prior or Other Production.***

a) To the extent a set or sets of Documents in a Party's possession, custody, or control that were previously produced in a prior or other investigation, proceeding or litigation are the subject of discovery in this case, and the ESI for such Documents (including but not limited to Metadata fields, searchable text, and organization) differs from the substance and format agreed to herein, such Documents may be produced in the same format in which they originally were produced. If such Documents originally were not produced with substantially the same Metadata identified in this Order, upon the Requesting Party's request, the Parties shall meet and confer to identify necessary additional fields and discuss an appropriate Metadata overlay or supplemental Metadata production for those Documents. The Parties agree that this is not a request to produce the same electronically stored information or Documents in more than one form; rather, it is a process for identifying supplemental information that does not require reproduction of previously produced Documents. Any overlay data fields or reproduced documents shall include original Bates numbers, if any.

b)   In the event certain Documents in the prior or other productions are in a form that is not reasonably usable by the Requesting Party, the Requesting Party and the Producing Party shall meet and confer regarding alternative forms of production for such Documents.  If the Parties are unable to agree after meeting and conferring in good faith, the Parties may seek resolution by the Court, Magistrate Judge, or Special Master appointed by the Court.

## V.   PROCESSING OF THIRD-PARTY DOCUMENTS

A.   Any Party that issues a non-party subpoena shall timely notify other Parties when it receives non-party productions of Documents, ESI, or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non- party to the other Parties. If the non-party produces Documents or ESI that are not Bates labeled, the Requesting Party will Bates-label the Documents or ESI before producing a copy to the other Parties if the produced Documents or ESI are of the type so requiring consistent with other provisions of this Plan. Nothing in this Protocol precludes a Requesting Party from reviewing a non-party production of Documents or ESI and applying (if the non-party produced Documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating Documents designated as CONFIDENTIAL) if the production contains Confidential Discovery Material as set forth in the Stipulated Protective Order.

B.   Nothing in this Plan is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or any third party to object to a subpoena.

## VI.   OTHER PROVISIONS

24

A.      Productions need not include any indication of the document request(s) to which a Document may be responsive.

B.      Documents shall be produced via secure FTP site, rather than through physical media (e.g.,CD-ROM, DVD, or external hard drive), unless such transmission is impracticable or the Parties hereafter agree upon on a different method of transmission.  Each production shall be accompaniedby a cover letter, to be sent via email at the time of production, including the following information:

1.      Name of the Litigation and its case number;

2.      Name of the Producing Party;

3.      Date of the production (mm/dd/yyyy);

4.      Bates number range;

5.      Confidentiality Designation (to the extent not otherwise clear from the Document and/or related Metadata);

6.      Notes regarding any irregularities in the production (e.g., whether it is a replacement production);

7.      With respect to any replacement production or Documents, a cross-reference to the original production and Bates number range that is being replaced; and

8.      With respect to any encrypted productions, an indication that a key to decrypt the production will be sent in a separate communication via email.

C.      The Parties shall produce Documents, including ESI, as they are kept in the ordinary course of business and are under no obligation to reconstruct or organize Documents from how they are kept in the ordinary course of business prior to production.

D.     Within a reasonable time after the production of Documents, the Parties will provide privilege logs for Privileged Material withheld from production.  The Producing Party shall provide a privilege log for all withheld Privileged Material, including redacted materials, with the exception that Privileged Material created by counsel for the Parties or on behalf of counsel for the Parties after the initiation of, and in connection with, this litigation need not be included in the privilege log.  As set forth in Rule 26.2 of the Local Rules, the Parties will endeavor to efficiently provide information regarding claims of privilege and shall meet and confer as necessary to achieve this end.  When asserting privilege on the same basis with respect to multiple Documents, it is presumptively proper to provide the information required on a privilege log by group or category. A Party receiving a privilege log that groups Documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis but may object if the substantive information required by this rule has not been provided in a comprehensible form.

E.     A Party may object to a request for production of ESI that is not reasonably accessible because of undue burden or cost.

1.     Objections pursuant to Paragraph E may include, but are not limited to:

a)   "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b)   random access memory (RAM) or other ephemeral data;

c)   online access data such as temporary Internet files, history, cache, cookies, etc.;

d)   backup data that are substantially duplicative of data that are more accessible elsewhere; and

e)  other forms of ESI, the preservation of which requires extraordinary

affirmative measures and/or disproportionate cost to preserve.

2.      Inclusion of possible objections in the above list is not a determination that

any such objection is valid, and the Parties reserve all rights with respect to such objections.

3.      If asserting an objection described in this Paragraph E, the Producing

Party shall inform the Requesting Party of (i) the electronic information it is willing to produce,

(ii) the nature and location of the information claimed to not be reasonably accessible, and (iii)

the reason(s) why the requested production would impose an undue burden or is unreasonably

costly.

4.      If asserting an objection described in this Paragraph E, the Producing

Party will afford the Requesting Party an opportunity to propose an alternative means of

compliance with the request.

F.      Nothing in this Plan alters or expands the rights and obligations of the

Requesting Party or the Producing Party pursuant to Federal Rule of Civil Procedure 26(b)

concerning discovery of deleted, archive or backup data.  If a Producing Party learns that ESI likely

to contain Responsive Data has been lost or destroyed after the date upon which the duty to

preserve that ESI arose, the Parties shall promptly meet and confer regarding such ESI.

G.      The Parties shall work with one another in good faith to resolve any issues,

disputes or objections that arise in connection with electronic discovery before raising such

matters with the Court.  Parties shall use their best efforts to raise issues promptly, in writing,

and the Parties shall have good faith discussions to attempt to resolve the matter.

27

H.     If the Parties are unable to agree in connection with any dispute over the discovery of ESI or need further clarification on any issue relating to the preservation, collection, or production of ESI, any party may seek appropriate relief from the Court.

I.     By entering this Protocol, a Party does not waive any objections it has to requests for documents. Nor does a Party give up its right to review its documents for privilege or any other reason (including to identify non-responsive documents), and the existence of this Plan cannot be used to compel a Party to produce Documents without review.

J.     Nothing herein shall preclude the Parties from agreeing to amend the terms of this Plan, and nothing herein shall preclude any Party from moving the Court to amend the terms of this Plan for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Plan until it has met and conferred in good faith with all Parties involved in the dispute.

*[The remainder of this page has been left intentionally blank]*

IT IS SO STIPULATED AND AGREED TO THIS 4th day of February 2022.

**THE ROSEN LAW FIRM, P.A.**

 /s/ Jacob A. Goldberg (with consent)
Jacob A. Goldberg
Gonen Haklay
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com
Email: lheifetz@rosenlegal.com

*Lead Counsel for Plaintiffs and Putative Class*

**BRYAN CAVE LEIGHTON PAISNER LLP**

 /s/ Eric Rieder
Eric Rieder
Chris M. LaRocco
Laith J. Hamdan
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-2000
Fax: (212) 541-4630
Email: erieder@bclplaw.com
Email: chris.larocco@bclplaw.com
Email: laith.hamdan@bclplaw.com

*Counsel for Defendants Omega Healthcare Investors, Inc., C. Taylor Pickett, Robert O. Stephenson, and Daniel J. Booth*

Dated: ___February 9___, 2022

        New York, New York

IT IS SO ORDERED:

_____
The Honorable Naomi Reice Buchwald
United States District Judge