**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: OMEGA HEALTHCARE INVESTORS, INC. SECURITIES LITIGATION | Case No.: 1:17-cv-08983-NRB |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Stipulation") is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure in the above-titled litigation between (i) lead plaintiff Royce Setzer and named plaintiff Earl Holtzman (together, "Plaintiffs") on behalf of themselves and the Settlement Class (defined below); and (ii) defendants Omega Healthcare Investors, Inc. ("Omega"), C. Taylor Pickett, Robert O. Stephenson, and Daniel J. Booth (Pickett, Stephenson and Booth collectively, the "Individual Defendants"; the Individual Defendants collectively with Omega, the "Defendants," and Defendants collectively with Plaintiffs, the "Parties").

WHEREAS:

A.    All words or terms used herein that are capitalized shall have the meaning ascribed to those words or terms set forth herein and in the section entitled "Definitions."

B.    On November 16, 2017, Dror Gronich filed a class action complaint for violations of the federal securities laws on behalf of a class of all Persons who purchased or otherwise acquired the securities of Omega between February 8, 2017, and October 31, 2017, in the United States District Court for the Southern District of New York ("Court") (Dkt. No. 1), captioned *Gronich v. Omega Healthcare Investors, Inc., et al.*, 1:17-cv-08983 ("*Gronich*"). On November 17, 2017, Steve Klein filed a substantially similar, related class action complaint for violations of the federal securities laws, captioned *Klein v. Omega Healthcare Investors, Inc., et al.*, 1:17-cv-09024 ("*Klein*").

C.    On March 27, 2018, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(3), *et seq.*, the Court consolidated the *Gronich* and *Klein* cases under the caption *In Re Omega Healthcare Investors, Inc. Securities Litigation*, 1:17-cv-08983 and granted the motion of Royce Setzer, appointing him as lead plaintiff and The Rosen Law Firm,

P.A. ("Lead Counsel") as lead counsel for the putative class. (Dkt. No. 44).

     D.     On May 25, 2018, Plaintiffs filed the consolidated amended class action complaint for violations of the federal securities laws ("Consolidated Complaint") (Dkt. No. 46), alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a) on behalf of a class of all Persons who purchased or otherwise acquired the securities of Omega between May 3, 2017, and October 31, 2017, both dates inclusive.

     E.     Defendants timely moved to dismiss the Consolidated Complaint. (Dkt. Nos. 51-54). After full briefing and a hearing, on March 25, 2019, the Court granted Defendants' motion to dismiss, with prejudice. (Dkt. No.62). On March 27, 2019, the Court entered judgment against Plaintiffs (Dkt. No. 63). On April 22, 2019, Plaintiffs timely filed their notice of appeal to the United States Court of Appeals for the Second Circuit ("Second Circuit") (Dkt. No. 64).

     F.     On March 26, 2020, while the appeal of the judgment was pending in the Second Circuit, Plaintiffs filed a motion for relief from the judgment, seeking permission to file a second amended consolidated complaint. (Dkt. Nos. 65-67). After the Parties had fully briefed Plaintiffs' motion for relief from the judgment but before the Court ruled on it, the Second Circuit, by opinion and order dated August 3, 2020, reversed the judgment of the Court dismissing the Consolidated Complaint and remanded the case for further proceedings. (Dkt. No. 74).[1] The Parties thereafter stipulated, and the Court ordered, that Plaintiffs file a second amended consolidated complaint. (Dkt. No. 77).[2]

     G.     On August 28, 2020, Plaintiffs filed the Second Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (Dkt. No. 80),

---

[1] The Second Circuit returned the mandate to the Court on August 26, 2020. (Dkt. No. 78).

[2] The Court denied as moot Plaintiffs' motion for relief from the judgment. (Dkt. No. 79).

alleging, among other things, claims against Defendants relating to statements in February 2017 and expanding the class period to begin on February 8, 2017. On November 24, 2020, Defendants timely filed their motion to dismiss the Complaint. (Dkt. Nos. 88-90).

H.     While Defendants' motion to dismiss the Complaint was pending, the parties agreed to conduct a mediation before neutral mediator David Murphy of Phillips ADR.  After submitting and exchanging mediation statements, the parties attended an all-day mediation session with Mr. Murphy on January 13, 2021.  The mediation did not result in an agreement, but the Parties remained in contact with Mr. Murphy periodically, conducting informal and formal negotiations over the next 19 months as further set forth below.

I.     On August 30, 2021, the Court convened oral argument on Defendants' motion to dismiss the Complaint. On September 28, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the Complaint. (Dkt. No. 99). The Court granted Defendants' motion with respect to claims based on statements in February 2017, which had the effect of truncating the class period to begin on May 3, 2017, but denied Defendants' motion in all other respects. *Id.*

J.     On November 9, 2021, Defendants answered the Complaint. (Dkt. No. 106).

K.     On December 16, 2021, the Court convened a Fed. R. Civ. P. 16 conference and entered a Civil Case Management Plan and Scheduling Order, setting January 13, 2023, as the fact discovery deadline. (Dkt. No. 116).

L.     Throughout 2022, the Parties engaged in discovery and class certification proceedings.  After negotiations over a protective order and a protocol for producing electronically stored information, Plaintiffs obtained extensive document production from Defendants and also obtained documents produced by non-parties in response to subpoenas.  The Parties also began

deposition discovery, with depositions of Plaintiffs, two putative expert witnesses and a fact witness.

M.      On March 16, 2022, Plaintiffs filed their motion to certify the Class. (Dkt. Nos. 129-131). After conducting class-related discovery, including the review of expert reports and expert depositions, Defendants filed their opposition to Plaintiffs' motion to certify the Class on August 13, 2022. (Dkt. Nos. 141-42). On September 15, 2022, Plaintiffs filed their reply brief in further support of their motion to certify the Class. (Dkt. Nos. 147-48).

N.      In the late summer of 2022, following substantial discovery, the parties agreed to conduct a second mediation before Mr. Murphy.  On September 20, 2022, the Parties submitted updated mediation statements, and on September 30, 2022 conducted an all-day mediation session concerning a potential settlement of all claims for the Settlement Class Period (defined below). No agreement was reached at the mediation, but the Parties remained in contact with Mr. Murphy and conducted further settlement discussions through the mediator.  After the Parties exchanged offers without agreement, Mr. Murphy issued a mediator's recommendation on October 21, 2022. All Parties accepted that recommendation on October 24, 2022, thus agreeing in principle to settlement of this Action, subject to negotiation of a definitive agreement and Court approval pursuant to Rule 23.

O.      On October 25, 2022, by letter from Lead Counsel, the Parties informed the Court of the settlement-in-principle.  The Court thereafter issued an order suspending the deadlines under the Scheduling Order, and also issued an order denying as moot Plaintiffs' motion to certify a class, without prejudice to their right to refile the motion in the event the settlement is not finalized.

P.      Plaintiffs, through Lead Counsel, have thoroughly investigated the claims, defenses, and underlying events that are the subject of the Action, engaging in targeted, thorough

discovery on the issues in the case.

Q.     Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Among other things, Defendants deny the allegations that they knowingly or recklessly made any material misstatement in, or omission from, their 2017 disclosures or that any member of the Class has suffered damages. Defendants have maintained and continue to maintain that each and every one of the Complaint's claims and/or potential claims lacks merit and that Defendants have meritorious defenses to all claims alleged in the Complaint.

R.     This Stipulation, whether or not consummated, and any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Defendants, or any of them, concerning any fact or matter alleged in the Action, any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity in any claim or defense that has been or could have been asserted by Defendants. Defendants are entering into this Settlement solely to eliminate the burden, expense, uncertainty, and distraction of further litigation.

S.     Plaintiffs believe that the claims they assert in the Action have merit and are supported by the evidence developed to date. Plaintiffs and Lead Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to adjudicate the Action through trial and appeals. Plaintiffs and Lead Counsel have also accounted for the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation. Lead Counsel also are mindful of the inherent problems of proof and possible defenses to the claims asserted in the Action. Based on their evaluation, Plaintiffs and Lead Counsel believe that the Settlement set forth in this

Stipulation is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

**NOW THEREFORE**, without any concession by Plaintiffs that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby **STIPULATED AND AGREED**, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties hereto, all Released Claims and all Released Defendants' Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

### DEFINITIONS

As used in this Stipulation, any exhibits attached hereto and incorporated herein by reference, and the Confidential Supplemental Agreement, the following capitalized terms shall have the meanings set forth below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.      "Action" means the putative class action captioned *In re Omega Healthcare Investors, Inc. Securities Litigation*, No. 1:17-cv-08983-NRB, filed in the United States District Court for the Southern District of New York and pending before the Honorable Naomi Reice Buchwald.

2.      "Authorized Claimant" means a Settlement Class Member who submits a Claim Form to the Claims Administrator that is found to be timely and valid under the terms of this Stipulation and the Preliminary Approval Order.

3.      "Claims" means any and all claims, demands, rights, actions, potential actions,

causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, costs, sanctions, judgments, decrees, matters, issues and/or controversies of any kind or nature whatsoever, whether known or Unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist (including, but not limited to, any claims arising under federal, state or foreign law, common law, bankruptcy law, statute, rule, or regulation relating to alleged fraud, breach of any duty, negligence, fraudulent conveyance, avoidance, violations of the Securities Act of 1933, as amended and rules promulgated thereunder, violations of the Securities Exchange Act of 1934, as amended and rules promulgated thereunder, violations of other federal securities laws, or otherwise), whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental or of any other type or in any other capacity.

4.      "Claims Administrator" means the firm Strategic Claims Services, which will provide all Court-approved notices to Settlement Class Members, process Proofs of Claim, and generally administer the Settlement.

5.      "Confidential Supplemental Agreement" means the separate confidential Supplemental Agreement Regarding Requests for Exclusion between Lead Counsel and Defendants' Counsel, entered into contemporaneously herewith.

6.      "Court" means the United States District Court for the Southern District of New York.

7.      "Defendant Releasors" means Defendants, and the heirs, representatives, attorneys, affiliates, executors, trustees, administrators, predecessors, successors, and assigns of each of

them, in their capacity as such, and any other Person legally entitled to bring Released Defendants' Claims on behalf of any Defendant, in that capacity.

8.    "Defendants' Counsel" means the law firm of Bryan Cave Leighton Paisner LLP.

9.    "Distribution Order" means an order of the Court, approving the Claims Administrator's determinations concerning the acceptance and rejection of the claims submitted and approving any fees and expenses not previously paid, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

10.    "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶ 80 below.

11.    "Escrow Account" means an interest-bearing escrow account, managed and controlled by the Escrow Agent, into which the Settlement Amount shall be deposited pursuant to the terms of this Stipulation, subject to the Court's supervisory authority.

12.    "Escrow Agent" means The Huntington National Bank. The Escrow Agent shall perform the duties as set forth in this Stipulation and any order of the Court.

13.    "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses pursuant to 15 U.S.C. § 78u-4.

14.    "Final," with respect to a court order, including, but not limited to the Judgment, means: (i) if there is an appeal from such court order, the later of (a) the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (b) the date of final dismissal of

any appeal from the order or the final dismissal of any proceeding on certiorari to review the order; or (ii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made. Any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund or to any request for an award of attorneys' fees or expenses, however, shall not in any way delay or affect the time set forth below for the Judgment to become Final or otherwise preclude the Judgment from becoming Final. The finality of the Judgment shall not be conditioned upon the resolution of the claims asserted in any other private civil action, including, but not limited to, any other putative class action.

15.    "Immediate Family" means children, parents, spouses, siblings, grandparents, grandchildren, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law, all of which include step and adoptive relationships.  As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

16.    "Judgment" means the proposed Order and Final Judgment to be entered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B.

17.    "Long Notice" means the proposed Notice of Pendency and Proposed Settlement of Class Action, to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-1.

18.    "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded

attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses the Court approves.

19.    "Notice" means collectively, subject to the Court's approval, (i) the Long Notice, attached hereto as Exhibit A-1; (ii) the Summary Notice, attached hereto as Exhibit A-2; and (iii) the Postcard Notice, attached hereto as Exhibit A-3.

20.    "Notice and Administration Expenses" means all costs, fees, and expenses incurred by the Claims Administrator in connection with providing Notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) receiving and reviewing claims; (ii) applying the Plan of Allocation; (iii) communicating with Persons regarding the proposed Settlement and claims administration process; (iv) distributing the proceeds of the Settlement; and (v) fees related to the Escrow Account and investment of the Settlement Fund.

21.    "Person(s)" means any legal person, entity, or organization.

22.    "Plaintiff Releasors" means Plaintiffs and each and every other Settlement Class Member (whether or not such Settlement Class Member receives the Notice, executes and delivers a valid Proof of Claim, or receives proceeds from the Settlement Fund), and each of the respective heirs, representatives, attorneys, affiliates, executors, trustees, administrators, predecessors, successors, and assigns of each of them, in their capacity as such, and any other Person legally entitled to bring Released Claims on behalf of any Plaintiff or other Settlement Class Member, in that capacity.

23.    "Plan of Allocation" means the proposed Plan of Allocation of Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Long Notice.

24.    "Postcard Notice" means the proposed Postcard Notice of Proposed Settlement of

Class Action, to be mailed substantially in the form attached hereto as Exhibit A-3.

25.    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

26.    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release Form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached as Exhibit A-4.

27.    "Released Claims" means any and all Claims, including Unknown Claims, that have been, or could have been, or in the future can or might be asserted against any one or more of the Released Defendant Parties, that directly or indirectly arise out of, are based upon, or relate in any way to (a) any allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this Action, or which could have been alleged in this Action, or (b) the purchase, acquisition, holding, sale, or disposition of any Omega security purchased or otherwise acquired during the Settlement Class Period. For the avoidance of doubt, Released Claims excludes any currently pending derivative claim filed purportedly on behalf of Omega and involving the allegations related to this Action.

28.    "Released Defendant Parties" means (i) Omega, its past, present and future, direct or indirect, parent entities, associates, affiliates, and subsidiaries, each and all of their respective past, present, and future directors, officers, partners, stockholders, predecessors, successors and employees, and in their capacity as such, each and all of their underwriters, advisors, attorneys (including Defendants' Counsel), auditors, consultants, trustees, insurers, co-insurers, reinsurers, representatives, and assigns; (ii) the Individual Defendants and their respective present, past and

future members of their Immediate Families; (iii) any and all persons, firms, trusts, corporations, and other entities in which any of the Defendants or any past, present, and future director or officer of Omega has a financial interest or was a sponsor, founder, settler or creator of the entity, and, in their capacity as such, any and all officers, directors, employees, trustees, beneficiaries, settlers, creators, attorneys, consultants, agents, or representatives of any such person, firm, trust, corporation or other entity; and (iv) in their capacity as such, the legal representatives, heirs, executors, administrators, predecessors, successors, predecessors-in-interest, successors-in-interest, and assigns of any of the foregoing.

29.     "Released Defendants' Claims" means any and all Claims, including Unknown Claims, that Defendants could have asserted against any of the Released Plaintiff Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the Claims in the Action, except for Claims relating to the enforcement of the Settlement.

30.     "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties.

31.     "Released Plaintiff Parties" means Plaintiffs and each and every Settlement Class Member, Lead Counsel, and each of their respective past or present parents, subsidiaries, divisions, departments, affiliates, controlling shareholders, officers, directors, partners, employees, contractors, auditors, agents, attorneys, accountants, advisors, principals, predecessors, successors, assigns, insurers, trustees, general or limited partners or partnerships, and limited liability companies; and the Immediate Families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Settlement Class.

32.    "Releases" means the terms, agreements, covenants, injunctions, and releases set forth in ¶¶ 45, 46, and 47 of this Stipulation, and in the Judgment.

33.    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation, including any subsequent written amendments to the Stipulation and/or to its exhibits.

34.    "Settlement Amount" means the total principal amount of thirty million seven hundred fifty thousand U.S. dollars ($30,750,000), in cash.

35.    "Settlement Class" means all Persons that purchased or otherwise acquired Omega securities during the Settlement Class Period. Excluded from the Settlement Class are: (a) Defendants, Omega's officers and directors and their Immediate Families, and entities in which such excluded persons hold a majority ownership interest; (b) those Persons who file a valid and timely request for exclusion in accordance with the Preliminary Approval Order, provided that such request for exclusion is not revoked; and (c) those Persons who have a net profit in purchases and sales of Omega securities during the Settlement Class Period or otherwise suffered no financial losses as a result of their purchase(s) or acquisition(s) of Omega securities.

36.    "Settlement Class Member" means any Person who is a member of the Settlement Class.

37.    "Settlement Class Period" means each day between February 8, 2017, and October 31, 2017, inclusive.

38.    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

39.    "Settlement Hearing" means the hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

40.    "Summary Notice" means the proposed Summary Notice of Pendency and

Proposed Class Action Settlement, to be published substantially in the form attached hereto as Exhibit A-2.

41.    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties, and the reasonable expenses of tax attorneys and accountants).

42.    "Unknown Claims" means any and all Released Claims that any of the Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its settlement with and release of the Released Parties or might have affected his, her, or its decision to enter into the Settlement, to not object to the Settlement or to not exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have waived, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by California Civil Code § 1542 (to the extent applicable) and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to California Civil Code § 1542, which provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her,

would have materially affected his or her settlement with the debtor
or released party.

Plaintiffs, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but the Parties shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Defendants and Plaintiffs acknowledge, and every member of the Settlement Class by law and operation of the Judgment shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## SCOPE OF SETTLEMENT

43.    The obligations incurred pursuant to this Stipulation are: (a) subject to approval by the Court and the Judgment reflecting such approval becoming Final; and (b) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims and Released Defendants' Claims.

44.    For purposes of this Settlement only, and subject to approval of the Court in accordance with Fed. R. Civ. P. 23(e), the Parties agree to: (a) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Settlement Class; (b) the appointment of Plaintiffs as Class Representatives for the Settlement Class; and (c) the appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Federal Rule

of Civil Procedure 23(g).

## RELEASES

45.    Upon the Effective Date, Plaintiff Releasors shall be deemed to have, and by operation of the Judgment shall have (i) fully, finally, and forever waived, released, relinquished, settled, and discharged each and every one of the Released Claims against each and every one of the Released Defendant Parties; and (ii) covenanted not to sue any of the Released Defendant Parties with respect to all such Released Claims.

46.    Upon the Effective Date, Plaintiff Releasors shall forever be barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding asserting any Released Claim against any of the Released Defendant Parties in any federal, state, or foreign court or tribunal, arbitral forum, administrative forum, or any other forum or proceeding of any kind, either directly, indirectly, representatively, derivatively, or in any other capacity.

47.    Upon the Effective Date, Defendant Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiff Parties and shall forever be barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, administrative forum or other forum of any kind, of any and all of the Released Defendants' Claims against any and all of the Released Plaintiff Parties.

## THE SETTLEMENT CONSIDERATION

48.    In full settlement of the claims asserted in the Action against Defendants and in consideration of the Releases, all of which the Parties agree are good and valuable consideration, Defendants shall pay or cause the Settlement Amount to be deposited into the Escrow Account

within twenty (20) days of the later of (i) entry of the Preliminary Approval Order; or (ii) Lead Counsel's providing Defendants' Counsel wiring instructions and mailing instructions (for delivery of any check payments) for the Settlement Amount, the payee's Form W-9, and any other documents reasonably required by Defendants or their insurance carriers to process the deposit of the Settlement Amount into the Escrow Account.

49.    With the sole exception of Defendants' obligation to cause the deposit of the Settlement Amount into the Escrow Account as provided for herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

50.    Other than Defendants' obligation to cause the deposit of the Settlement Amount as provided for herein, the Released Defendant Parties shall have no obligation to make any other payments into the Escrow Account, to the Escrow Agent, to Plaintiffs, to Lead Counsel, or to any other Settlement Class Member pursuant to this Stipulation.

### USE AND TAX TREATMENT OF SETTLEMENT FUND

51.    The Settlement Fund shall be used to pay: (i) any Taxes; (ii) Notice and Administration Expenses; (iii) any attorneys' fees and expenses awarded by the Court; (iv) any costs and expenses allowed under 15 U.S.C. § 78u-4 and awarded to Plaintiffs by the Court; (v)

any other fees and expenses the Court awards; and (vi) the claims of Authorized Claimants.

52.    The Net Settlement Fund shall be distributed to Authorized Claimants. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account, and all earnings thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, and/or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance. Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

53.    After the Settlement Amount has been deposited into the Escrow Account, the Parties agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel timely and properly to prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to occur. Consistent with the foregoing:

a.    For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Lead Counsel or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraphs (b) and (c) of this paragraph.

b.    All Taxes shall be paid out of the Settlement Fund. In all events, Released Defendant Parties shall have no liability or responsibility whatsoever for the Taxes or the filing of any tax return or other document with the Internal Revenue Service or any other state or local taxing authority. In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund. Any Taxes or Tax expenses owed on any earnings on the Settlement Amount prior to being deposited into the Escrow Account shall be the sole responsibility of the entities that make the deposit.

c.    Taxes shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by Lead Counsel out of the Settlement Fund without prior order from the Court or approval by Defendants, and Lead Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as

well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with Lead Counsel, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

54.     This is not a claims-made settlement. As of the Effective Date, Defendants and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## ATTORNEYS' FEES AND EXPENSES

55.     On Lead Counsel's behalf, Plaintiffs intend to apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action, including reimbursement to Plaintiffs pursuant to 15 U.S.C. § 78u-4, plus any earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund. Plaintiffs will further seek compensatory awards of up to $20,000 for each Plaintiff as compensation for his time and effort in representing the Class. The Released Defendant Parties or persons acting under their control shall take no position with respect to Plaintiffs' Fee and Expense Application, or any other request for award of attorneys' fees, reimbursement of expenses, or awards to Plaintiffs.

56.     The attorneys' fees and expenses the Court awards and the timing for the payment of fees and expenses is within the sole discretion of the Court. Any attorneys' fees and expenses the Court awards shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the order awarding such attorneys' fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.

57.     Any payment of attorneys' fees and expenses shall be subject to Lead Counsel's

obligation to refund or repay to the Settlement Fund any paid amounts, plus accrued earnings at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees and/or expenses is reduced or reversed by Final court order. Lead Counsel shall make the appropriate refund or repayment in full no later than fourteen calendar days after receiving notice of the termination of the Settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees and/or expenses by Final non-appealable court order.

58.    With the sole exception of Defendants' obligation to cause the deposit of the Settlement Amount to be made into the Escrow Account as provided for herein, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Lead Counsel in the Action.

59.    The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses ordered by the Court.

60.    The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation. Any order or proceeding relating to any Fee and Expense Application,

including an award of attorneys' fees or expenses in an amount less than the amount requested by

Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof,

shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the

Judgment approving the Stipulation and the Settlement set forth herein, including, but not limited

to, the release, discharge, and relinquishment of the Released Claims against the Released

Defendant Parties, or any other orders entered pursuant to the Stipulation.

## NOTICE AND ADMINISTRATION EXPENSES

61.    Except as otherwise provided herein, the Net Settlement Fund shall be held in the

Escrow Account until the Effective Date.

62.    Prior to the Effective Date, without further approval from Defendants or further

order of the Court, Lead Counsel may expend up to $650,000.00 from the Settlement Fund to pay

Notice and Administration Expenses. Any monies from the Notice and Administration Expenses

that remain after administration shall be returned to the Net Settlement Fund. Notice and

Administration Expenses in excess of $650,000.00 shall not be paid out of the Settlement Fund

without Court approval, as warranted, upon prior notice to Defendants' Counsel. Lead Counsel

shall instruct the claims administrator to keep detailed records substantiating the expenditures that

it makes in the performance of its services under the Settlement. Taxes and fees related to the

Escrow Account and investment of the Settlement Fund may be paid as incurred, without further

approval of Defendants or further order of the Court.

## CLASS ACTION FAIRNESS ACT

63.    Defendants shall be responsible for providing any required notice under the Class

Action Fairness Act of 2005, 28 U.S.C. §§ 1715(b), if any, at their own expense.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

64.    Lead Counsel will move the Court for a Distribution Order, on notice to

Defendants' Counsel, approving the Claims Administrator's determinations concerning the acceptance and rejection of the claims submitted herein, and, if the Effective Date has occurred, directing the payment of the Net Settlement Fund to Authorized Claimants.

65.    The Claims Administrator shall administer the Settlement under Lead Counsel's supervision in accordance with the terms of this Stipulation and subject to the jurisdiction of the Court. The Released Defendant Parties shall have no responsibility for (except for Defendants' obligation to cause the deposit of the Settlement Amount into the Escrow Account as provided for herein), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator and shall have no liability to the Settlement Class in connection with such administration.

66.    The Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss, as defined in the Plan of Allocation included in the Long Notice, or in such other plan of allocation as the Court may approve.

67.    Defendants shall have no role in the development of, and will take no position with respect to, the Plan of Allocation. The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any Court decision concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. The Released Defendant Parties shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

68.    If there is any balance remaining in the Net Settlement Fund (whether by reason of

tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, redistribute such balance among Authorized Claimants who have cashed their checks and who would receive at least $10.00 from such redistribution. Any balance that remains in the Net Settlement Fund after re-distribution(s) that is not feasible or economical to reallocate, after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, shall be contributed to Investor Justice and Education Clinic of the Howard University School of Law or other non-profit that the Court, in its discretion, approves under the *cy pres* doctrine.

## ADMINISTRATION OF THE SETTLEMENT

69.     Any Settlement Class Member who fails timely to submit a valid Proof of Claim (substantially in the form of Exhibit A-4) will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and all Releases.

70.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Proof of Claim submitted. The Released Defendant Parties shall have no liability, obligation, or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging of claims of Settlement Class Members. Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

71.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

      a.      Each Settlement Class Member shall be required to submit a Proof of Claim, substantially in the form attached hereto as Exhibit A-4, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

      b.      All Proofs of Claim must be submitted by the deadline the Court sets in the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A, and specified in the Notice, unless Lead Counsel extends the deadline, subject to the Court ultimately approving the distribution to Settlement Class members, or by Order of the Court. Any Settlement Class Member who fails to submit a Proof of Claim by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court or the discretion of Lead Counsel, late-filed Proofs of Claim are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and all Releases. Provided that it is received before the motion for the Distribution Order is filed, a Proof of Claim shall be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon. If submitted electronically at www.strategicclaims.net the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

      c.      Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to

review by the Court;

       d.      Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant notice of the deficiency and the chance to remedy any curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

       e.      If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

       f.      The determinations of the Claims Administrator accepting or rejecting disputed claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Distribution Order.

72.     Each claimant who submits a Proof of Claim shall be deemed to have submitted to

the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all Releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Action or the Settlement.

73.    Payment pursuant to the Distribution Order shall be deemed final and conclusive against any and all Settlement Class Members. All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the Releases provided for herein and therein.

74.    All proceedings with respect to the administration, processing and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

75.    No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth in this section or any of its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

76.    No Person shall have any claim against Plaintiffs, Lead Counsel, or the Claims Administrator, or other agents designated by Lead Counsel, based on the distributions made

substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

## TERMS OF THE PRELIMINARY APPROVAL ORDER

77.    Concurrently with their application to the Court for preliminary approval of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order will, *inter alia*, certify the Settlement Class for Settlement purposes only, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

78.    Defendants shall provide, or cause to be provided, to Lead Counsel or the Claims Administrator, at no cost to Plaintiffs or the Settlement Class, promptly upon filing of the motion for preliminary approval, the necessary information to ascertain the names and addresses of Persons who purchased or acquired Omega securities during the Settlement Class Period, as identified in the records maintained by Omega's transfer agent. Lead Counsel and the Claims Administrator shall use such information solely to effectuate this Settlement and shall in all events keep the information confidential and shall not distribute the information to anyone besides Lead Counsel and the Claims Administrator.

## TERMS OF THE FINAL ORDER AND JUDGMENT

79.    If the Court approves the Settlement this Stipulation memorializes, Lead Counsel and Defendants' Counsel shall jointly request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B. The Judgment shall contain a bar order ("Bar Order") substantially in the form set forth in Exhibit B that shall bar all future claims by any Person against any of the Released Defendant Parties, and by the Released Defendant Parties against any Person,

for (a) contribution or indemnity (or any other similar claim, however denominated on whatsoever theory) arising out of or related to the claims or allegations asserted by Plaintiffs in the Action, or (b) any other Claim of any type, for which the injury claimed is measured by reference to that Person's actual or potential liability to Plaintiffs and/or the Settlement Class Members; provided, however, nothing herein shall preclude any of the Defendants from seeking to enforce the terms of: (1) any insurance policy or policies that may provide coverage for payment of the Settlement Amount and/or any other costs, expenses, or amounts incurred in connection with the Action, the Settlement, or any other actions involving the allegations related to this Action (including without limitation, any currently pending derivative litigation filed on behalf of Omega); or (2) this Stipulation, the Settlement, or the Judgment. The Bar Order shall also provide that any Final verdict or judgment that may be obtained by or on behalf of the Settlement Class or a Settlement Class Member against any Person subject to the Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Defendants for common damages; or (b) the amount paid by or on behalf of the Defendants to the Settlement Class or Settlement Class Member for common damages.

## **EFFECTIVE DATE OF THE SETTLEMENT**

80.    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived:

      a.    entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit A annexed hereto;

      b.    the deposit of the Settlement Amount into the Escrow Account;

      c.    no Party has validly exercised its right to terminate the Settlement;

      d.    approval by the Court of the Settlement, following the period set forth for notice under the Class Action Fairness Act, and following notice to the Settlement Class

and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

e.      the Court enters a Judgment, substantially in the form set forth in Exhibit B annexed hereto, that becomes Final.

### WAIVER OR TERMINATION

81.      Each of the Parties shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so (a "Termination Notice") to all other Parties hereto, through counsel, within twenty (20) calendar days of: (a) a Court order rejecting or denying approval of the Settlement, or modifying the Settlement in any material respect; (b) the Effective Date of the Settlement not otherwise occurring for any reason other than Defendants' failure to meet their obligation to cause the deposit of the Settlement Amount into the Escrow Account as provided for herein; or (c) any material term of the Settlement not being satisfied.

82.      If Defendants fail to fulfill their obligation to cause the deposit of the Settlement Amount into the Escrow Account as provided for herein, then Plaintiffs, on behalf of the Settlement Class, and not Defendants (except as otherwise provided herein), shall have the right to (a) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein; or (b) terminate the Settlement and Stipulation at any time prior to the Court's entry of the Final Judgment by providing a Termination Notice to all other Parties, which termination will not become effective if the Settlement Amount is deposited into the Escrow Account within five (5) business days of such Termination Notice.

83.      In addition to the foregoing, Defendants shall also have the option to terminate the Settlement and this Stipulation if the aggregate number of allegedly damaged publicly traded Omega securities purchased or acquired during the Settlement Class Period, for which potential

Settlement Class Members timely and validly request exclusion from the Settlement Class, exceeds the threshold specified in the Confidential Supplemental Agreement. The Parties agree to maintain the confidentiality of the Confidential Supplemental Agreement, which shall not be filed with the Court unless (a) ordered by the Court, or (b) as otherwise set forth in the Confidential Supplemental Agreement. Nor shall the Confidential Supplemental Agreement otherwise be disclosed to any Person other than the Released Defendant Parties, except as set forth in the Confidential Supplemental Agreement. Notwithstanding anything to the contrary, this paragraph shall survive termination of the Settlement and this Stipulation.

84.    The Preliminary Approval Order, attached hereto as Exhibit A, shall provide that requests for exclusion from the Settlement Class shall be received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Upon receiving any request for exclusion pursuant to the Notice, Lead Counsel shall no later than five (5) calendar days after receiving a request for exclusion or fifteen (15) calendar days prior to the Settlement Hearing, whichever is earlier, notify Defendants' Counsel of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it by e-mail.

85.    If, before the Settlement becomes Final, any Defendant or any insurer of Defendants that is funding the Settlement Payment files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under Bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not deposited into the Settlement Fund by others within ten (10) business days of the return of the Settlement

Fund amount, then, at the election of Plaintiffs, the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of that Defendant, and that Defendant and Plaintiffs and Settlement Class Members shall be restored to their litigation positions immediately prior to October 25, 2022. All Releases and the Judgment as to other Defendants shall remain unaffected.

86.     Defendants warrant that at the time of the deposit of the Settlement Amount, neither they nor their insurers that are funding the Settlement Payment will be insolvent, and payment will not render them or such insurers insolvent, within the meaning of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

87.     If an option to terminate this Stipulation and Settlement arises under any of the paragraphs of this section (Waiver or Termination): (i) neither Defendants nor Plaintiffs (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Defendants or Plaintiffs, respectively, as applicable.

88.     If the Settlement is terminated as set forth herein or cannot become effective for any reason, then: (i) the Settlement shall be without prejudice; (ii) none of the terms of the Stipulation or Settlement shall be effective or enforceable, except as specifically provided herein; (iii) the Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to October 25, 2022, including any positions with respect to service or jurisdiction; (iv) except as specifically provided herein, the Parties shall proceed in all respects as if this Stipulation and any related order had not been entered; and (v) this Stipulation and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action and shall not be used against or to the prejudice of either Defendants or Plaintiffs in any

court filing, deposition, at trial, or otherwise.

89.     In the event the Settlement is terminated or fails to become effective for any reason, any portion of the Settlement Amount previously paid, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount, shall be returned to the Person(s) that made the deposit(s) within ten (10) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Lead Counsel. At the request of Defendants' Counsel, the Escrow Agent or its designees shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to the Person(s) that made the deposits or as otherwise directed.   Notwithstanding anything to the contrary, this provision shall survive termination of the Settlement and this Stipulation.

## NO ADMISSION

90.     Whether or not consummated, and whether or not approved by the Court, this Stipulation, and any discussion, negotiation, proceeding, agreement, or exhibit relating to the Stipulation, the Settlement, and any matter arising in connection with settlement discussions, negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms of the Settlement and this Stipulation, and in particular:

a.     do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Plaintiffs and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to

the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants or any person or entity whatsoever;

b.    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Plaintiffs, or any other member of the Settlement Class as evidence of any infirmity in the claims of Plaintiffs, or the other members of the Settlement Class;

c.    do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Plaintiffs, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Plaintiffs, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

d.    do not constitute, and shall not be construed against Defendants, Plaintiffs, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

e.    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs, or any other member of the Settlement Class, that any of their claims are without merit or infirm or that damages

recoverable under the Complaint would not have exceeded the Settlement Amount.

91.    Notwithstanding the paragraph immediately above, the Parties, and their respective counsel, may file this Stipulation and/or the Judgment in any action that may be brought against them to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Judgment. All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## MISCELLANEOUS PROVISIONS

92.    The exhibits to the Stipulation (except the Plan of Allocation to the extent incorporated in those exhibits) and the Confidential Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.  It is not a condition of the Settlement that any particular plan of allocation be approved.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

93.    The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Parties and their respective counsel agree not to contend that each has not complied fully with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant

to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

94.    This Stipulation, along with its exhibits and the Confidential Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors, that are materially and adversely affected by the modification, amendment, or waiver.

95.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

96.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses and implementing and enforcing the terms of this Stipulation.

97.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

98.    This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement as against the Defendants, and no representation, warranty, or inducement has been made by any Party concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

99.    Nothing in the Stipulation, or the negotiations relating thereto, is intended to, or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without

limitation, attorney-client privilege, joint defense privilege, or work product protection.

100.    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

101.    Pending final approval by the Court of the Stipulation and its attached exhibits, all proceedings in the Action shall remain stayed.

102.    Notwithstanding anything herein to the contrary, all designations and agreements made, or orders entered in the Action relating to the confidentiality of documents or information shall survive this Stipulation.

103.    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via e-mail in pdf format shall be deemed originals.

104.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

105.    The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

106.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

107.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority

to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

108.    The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a hearing for consideration of final approval of the Settlement and Lead Counsel's Fee and Expense Application, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain final approval by the Court of the Settlement.

109.    Notices required or permitted by this Stipulation shall be submitted by email and either by overnight mail or hand delivery as follows:

| Notice to Plaintiffs and the Settlement Class: | Notice to Defendants: |
|---|---|
| Jacob A. Goldberg<br>Gonen Haklay<br>Leah Heifetz-Li<br>The Rosen Law Firm, P.A.<br>101 Greenwood Avenue, Suite 440<br>Jenkintown, PA 19046<br>215-600-2817<br>JGoldberg@rosenlegal.com<br>GHaklay@rosenlegal.com<br>LHeifetz@rosenlegal.com | Eric Rieder<br>Chris LaRocco<br>Laith J. Hamdan<br>Bryan Cave Leighton Paisner, LLP<br>1290 Avenue of the Americas<br>New York, NY 10104-3300<br>212-541-2000<br>ERieder@bclplaw.com<br>Chris.LaRocco@bclplaw.com<br>Laith.Hamdan@bclplaw.com |

110.    Except as otherwise provided herein, each Party shall bear its own costs.

**IN WITNESS WHEREOF,** the Parties have caused this Stipulation to be executed, by

their duly authorized attorneys, as of this 9th day of December 2022.

Dated: December 9, 2022

THE ROSEN LAW FIRM, P.A.

By: _____
Jacob A. Goldberg
Gonen Haklay
Leah Heifetz-Li
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19025
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com
Email: lheifetz@rosenlegal.com

*Lead Counsel for Lead Plaintiff,*
*Additional Plaintiff, and the Class*

Dated: December 9, 2022

BRYAN CAVE LEIGHTON PAISNER LLP

By: _____
Eric Rieder
Chris LaRocco
Laith Hamdan
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 541-2057
Fax: (212) 541-4630
Email: erieder@bclplaw.com
Email: chris.larocco@bclplaw.com
Email: laith.hamdan@bclplaw.com

*Counsel for Defendants Omega Healthcare*
*Investors, Inc, C. Taylor Pickett, Robert O.*
*Stephenson, and Daniel J. Booth*